UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES FEASTER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-3220 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

Pursuant to a turnover order obtained in state court, the plaintiff-homeowners seek to collect from the defendant, Mid-Continent Casualty Company ("Mid-Continent"), a default judgment entered against its insured, Kingwood Estate Homes, L.L.C. ("Kingwood"). Pending before the Court are the homeowners' and Mid-Continent's cross-motions for summary judgment concerning Mid-Continent's duty to indemnify (Doc. Entry Nos. 15 & 31). For the reasons that follow, the Court determines that Mid-Continent owes no indemnification obligation. Accordingly, the defendant's motion is GRANTED and the plaintiffs' motion is DENIED.

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

The facts underlying this action are undisputed. On January 25, 2006, plaintiffs James and Paulette Feaster purchased a new home built by Kingwood in 2005. During the construction, Kingwood was covered by commercial general liability ("CGL") policies issued by Mid-Continent. The first policy ran from April 24, 2004 to April 24, 2005, and the second, a

renewal policy, ran from April 24, 2005 to April 24, 2006. On April 24, 2006, the policy expired without being renewed.

Several years after their purchase, the Feasters began to encounter structural and cosmetic damages to their home. The relevant facts are set forth in the underlying state court pleadings. Initial evidence of damage surfaced in the spring of 2008, when the Feasters noticed cracking in the tile flooring located in the kitchen. Although they had the tiles replaced that summer, the replacement tiles began to crack by the summer of 2009. Between 2009 and 2010, cracks and other defects formed in the sheet rock, brick mortar and woodwork, and sloping and deflections developed in the floors. The Feasters attributed the damage to defective construction of their home's foundation. In February 2011, the Feasters filed a lawsuit complaining about these defects and, in 2012, named Kingwood among the defendants they blamed for their loss. In their complaint, they asserted violations of the Texas Deceptive Trade Practices Act ("DTPA") as well as causes of action for negligence, breach of warranty and fraud.

Kingwood forwarded the lawsuit to Mid-Continent seeking a defense and indemnification. Mid-Continent denied the coverage request, citing several policy exclusions. When Mid-Continent withheld a defense, Kingwood did not answer the suit. As a result, on April 18, 2013, a default judgment was entered against Kingwood. On the issue of liability, the state court found that Kingwood's negligent work alone had proximately caused the damage to the Feasters' home. The court made no determination about when actual physical damage occurred, however. Based on its factual finding, the court awarded the Feasters $305,130.00 in actual damages for structural and cosmetic repairs, damages for diminution in the value of their home, consulting fees, attorneys' fees and costs.

The Feasters attempted to collect the judgment, but were unsuccessful. Subsequently, they obtained Kingwood's interest in the Mid-Continent policy pursuant to a turnover order dated July 26, 2013; the order also named David A. Fettner as receiver. Under the authority of that order, the Feasters sued Mid-Continent in Texas state court seeking indemnification for their loss. Mid-Continent answered the suit then removed the action to this Court on November 1, 2013 based on federal diversity.

The operative complaint, filed on June 5, 2014, contains several causes of action. The plaintiffs allege that by denying coverage for the underlying judgment, Mid-Continent has engaged in unfair and deceptive settlement practices in violation of the Texas Insurance Code and the DTPA. The plaintiffs additionally assert causes of action for breach of the insurance contract and breach of the duty of good faith and fair dealing. Because the basic facts are not disputed, the parties move the Court to adopt their respective interpretations of the Mid-Continent policy and grant summary judgment in their favor.

### III. ANALYSIS AND DISCUSSION

Cases involving the interpretation of an insurance policy are well-suited for summary disposition. *See Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994). Determining summary judgment in this case does not, however, turn on the parties' chief dispute: whether policy exclusions apply to preclude coverage. On the contrary, the dispositive issue is whether, under Mid-Continent's occurrence-based policy, an "occurrence" took place during the policy period that triggered coverage in the first instance. To answer this question, the Court applies the "actual injury" or "injury-in-fact" approach adopted by the Texas Supreme Court in *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008), and, in *Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 225 (5th Cir. 2009),

recognized by the Fifth Circuit as prevailing law in Texas. In *Don's Bldg. Supply*, the Texas Supreme Court examined CGL policy provisions similar to those presently under scrutiny and held that "property damage . . . occur[s] when actual physical damage to the property occur[s]." *Don's Bldg. Supply*, 267 S.W.3d at 24.

With this holding in mind, the Court turns to the relevant language in Mid-Continent's policy. The policy provides coverage for one year—from April 24, 2005 to April 24, 2006—for "those sums that the insured [Kingwood] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Coverage is available as long as

> (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [and]
> (2) The 'bodily injury' or 'property damage' occurs during the policy period.

"Property damage" and "occurrence" are defined in Section V. of the policy. "Property damage" means

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Texas Supreme Court has opined that this definition of occurrence, read together with the other policy provisions, imposes coverage limitations in at least two respects:

> First, because the occurrence must be an 'accident,' coverage for intentional torts is excluded. Second, because a single occurrence can be 'an accident' and consist of 'continuous or repeated exposure to substantially the same general harmful

> conditions,' the definition of occurrence serves to limit the number of occurrences an insured can claim for what the policy deems to be a single occurrence.

*Id.* at 24. Guided by these principles and in the context of identically-worded CGL provisions, the court rejected any approach to the occurrence question that did not give effect to these limitations. *Id.* at 25-29 (rejecting manifestation rule, exposure rule, multiple trigger rule and continuous-injury rule under policy language).

Applying the approach in *Don's Bldg. Supply*, the Court finds that property damage in this case occurred no earlier than the spring of 2008 when, according to an inspection report attached to the state court complaint, cracks "sudden[ly]" appeared in the tile flooring in the Feasters' kitchen. "The cracks themselves"—not the faulty workmanship that caused them—constitute "physical damage" as contemplated by the policy. *Wilshire*, 581 F.3d at 225. In *Wilshire*, where property damage caused by a construction project was deemed to have occurred during the policy period, the Fifth Circuit underscored that "cracks are not merely a warning of prior undiscovered damage; they are the damage itself." *Id.* at 225.

Although it might be difficult in some cases to "[p]inpoint the moment of injury retrospectively" due to "delay between the time of property damage and the discovery of that damage," *Don's Bldg. Supply*, 267 S.W.3d at 25, 29, the facts of this case do not appear to present any such challenge. The underlying complaint and the documentation accompanying it indicate that the date when the cracks occurred—the spring of 2008—and the date when the Feasters discovered them are one and the same. *Cf. Wilshire*, 581 F.3d at 225 (relying on allegations in homeowner's complaint to determine when actual damage occurred). Because that date is outside the policy period, Mid-Continent has no obligation to cover the loss.

In light of this conclusion, the Court will not address the policy exclusion and other arguments raised by the parties. These contentions have been rendered moot by the Court's ruling.

## IV. CONCLUSION

Based on the foregoing analysis and discussion, the Court GRANTS summary judgment for the defendant and DENIES summary judgment for the plaintiffs.

It is so **ORDERED**.

SIGNED on this 24th day of November, 2014.

_____
Kenneth M. Hoyt
United States District Judge