UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES FEASTER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-3220 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court are cross-motions for summary judgment concerning the duty of the defendant, Mid-Continent Casualty Company ("Mid-Continent"), to pay a default judgment entered against its insured, non-party Kingwood Estate Homes, L.L.C. ("Kingwood") (Doc. Entry Nos. 15 & 31). Previously, in an opinion and order entered on November 24, 2014, the Court granted summary judgment in favor of Mid-Continent and denied summary judgment for the plaintiffs, James and Paulette Feaster (the "Feasters") and David A. Fettner, a court-appointed receiver (collectively, the "plaintiffs") (Doc. Entry No. 47). Coverage was denied because an occurrence did not take place during the effective dates of the insurance contracts submitted as evidence. On December 9, 2014, Mid-Continent filed an unopposed motion to vacate the Court's order and reopen the case based on the recent discovery of renewal policies—submitted as new summary judgment evidence—that bear on the plaintiffs' claims (Doc. Entry No. 49). On December 18, 2014, the Court vacated its November order based on the representations contained that motion (Doc. Entry No. 51). For the reasons that follow, the Court determines that summary judgment was properly granted and should be REINSTATED in favor of Mid-Continent.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this action are undisputed.  On January 25, 2006, the Feasters purchased a new home built by Kingwood in 2005.  At all relevant times, Kingwood was covered by commercial general liability ("CGL") policies issued by Mid-Continent.  The initial policy ran from April 24, 2004 to April 24, 2005 and was renewed annually, under practically identical terms, in 2005, 2006, 2007 and 2008.  The 2008 policy expired on April 24, 2009.[1]

Several years after their purchase, the Feasters began to encounter structural and cosmetic damages to their home.  The relevant facts are set forth in the underlying state court pleadings. Initial evidence of damage surfaced in the spring of 2008, when the Feasters noticed cracking in the tile flooring located in the kitchen.  Although they had the tiles replaced that summer, the replacement tiles began to crack by the summer of 2009.  Between 2009 and 2010, the damage worsened as cracks and other defects formed in the sheet rock, brick mortar and woodwork, and sloping and deflections developed in the floors.  The Feasters attributed the damage to defective construction of their home's foundation.  In February 2011, the Feasters filed a lawsuit complaining about these defects and, in 2012, named Kingwood among the defendants they blamed for their loss.  In their complaint, they asserted violations of the Texas Deceptive Trade Practices Act ("DTPA") as well as causes of action for negligence, breach of warranty and fraud.

Kingwood forwarded the lawsuit to Mid-Continent seeking a defense and indemnification.  Mid-Continent denied the coverage request, citing several policy exclusions, including exclusions "j" and "l."  Exclusion "j" provides, in relevant part, that coverage is precluded for property damage to "[p]roperty you [Kingwood] own."  By endorsement, exclusion "l," or the "your work" exclusion, precludes coverage for

---

[1] Although the operative complaint cites the 2004 and 2005 policies as the basis for coverage, in its vacatur motion Mid-Continent concedes that the 2006, 2007 and 2008 policies are relevant to the instant dispute (Doc. Entry No. 49).

> **l. Damage To Your Work**
> 'Property damage' to 'your [Kingwood's] work' arising out of it or any part of it and included in the 'products-completed operations hazard'.[2]

"Your work" is defined as "[w]ork or operations performed by you [Kingwood] or on your [Kingwood's] behalf." A "products-completed operations hazard" includes, in relevant part, "'property damage' occurring away from premises you [Kingwood] own . . . arising out of . . . 'your [Kingwood's] work.'"

When Mid-Continent withheld a defense, Kingwood did not answer the suit. As a result, on April 18, 2013, a default judgment was entered against Kingwood. On the issue of liability, the state court found that Kingwood's negligent work and supervision had proximately caused the damage to the Feasters' home. Based on this finding, the court awarded the Feasters $305,130.00 in actual damages for structural and cosmetic repairs, damages for diminution in the value of their home, consulting fees, attorneys' fees and costs.

The Feasters attempted to collect the judgment, but were unsuccessful. Subsequently, they obtained Kingwood's interest in the Mid-Continent policies pursuant to a turnover order dated July 26, 2013; the order also named David A. Fettner as receiver. Under the authority of that order, the plaintiffs sued Mid-Continent in Texas state court seeking indemnification for the Feasters' loss. Mid-Continent answered the suit then removed the action to this Court on November 1, 2013 based on federal diversity.

The operative complaint, filed on June 5, 2014, contains several causes of action. The plaintiffs allege that by denying coverage for the underlying judgment, Mid-Continent has engaged in unfair and deceptive settlement practices in violation of the Texas Insurance Code and the DTPA. The plaintiffs additionally assert causes of action for breach of the insurance

---

[2] This superseding endorsement omits the following language, contained in the original exclusion: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your [Kingwood's] behalf by a subcontractor."

3 / 10

contracts and breach of the duty of good faith and fair dealing. Because the basic facts are not disputed, the parties move the Court to adopt their respective interpretations of the Mid-Continent policies and grant summary judgment in their favor.

### III. CONTENTIONS OF THE PARTIES

Mid-Continent continues to maintain that policy exclusions—specifically exclusion "j" and the "your work" exclusion (exclusion "l")—apply to exclude coverage for property damage to the Feasters' home. Exclusion "j," it argues, bars coverage for any damage that occurred while Kingwood owned the property—that is, before the sale date of January 25, 2006. With respect to any post-sale damage, Mid-Continent invokes the "your work" exclusion, claiming that coverage is excluded for property damage arising from Kingwood's work, regardless of whether the work was performed by Kingwood or a subcontractor.

The plaintiffs concede that damage to the home occurred after the Feasters took possession of it and not while Kingwood owned the property. The plaintiffs take exception, therefore, only to Mid-Continent's application of the "your work" exclusion. In their view, the exclusion is unconscionable, and thus unenforceable under Texas law, because it reduces the Mid-Continent policies to "phantom polic[ies], not covering anything."

### IV. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party that fails to make a sufficient showing of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing [the Court] of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp.*, 477 U.S. at 323; *see Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light

most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Id.* (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

Cases involving the interpretation of an insurance policy are well-suited for summary disposition. *See Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994). Under Texas law, the same general rules that govern the interpretation of contracts govern the interpretation of insurance policies; a policy must be interpreted to effectuate the intent of the parties at the time the policy was formed. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). Terms within an insurance contract are given "their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (internal citation omitted).

If an insurance contract is worded such that it "can be given a definite or certain legal meaning," then it is unambiguous and enforceable as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Where an insurance contract is susceptible to multiple reasonable interpretations, a court must adopt the interpretation most favorable to the insured. *In re Deepwater Horizon*, 728 F.3d 491, 499 (5th Cir. 2013) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). "The court must do so even if the insurer's interpretation is *more* reasonable than the insured's—'[i]n particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured,' and '[a]n intent to exclude coverage must be express in clear and unambiguous language.'" *Id.* (citations omitted). Nevertheless, a court will not find a contract ambiguous merely because the parties offer contradictory interpretations. *See Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 & n.28 (5th Cir. 2000); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998).

"The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy" that permit the insurer to deny coverage. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citing *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. App.—San Antonio 1994, writ denied)); *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied) (acknowledging that the Texas Insurance Code places the burden on the insurer to prove any exception to coverage). Once the insurer has established that an exclusion applies, the burden shifts back to the insured to prove that an exception to the exclusion applies. *Guar. Nat'l Ins. Co.*, 143 F.3d at 193 (internal citation omitted).

## V.     ANALYSIS AND DISCUSSION

The parties dispute whether the "your work" exclusion applies to bar coverage. That exclusion precludes coverage for "'[p]roperty damage' to '[Kingwood's] work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" The damage to the Feasters' home satisfies both conditions. As to the first condition, the state court has already determined that the alleged damage was proximately caused by Kingwood's negligent construction work as well as its negligent supervision of subcontractors hired by it to assist in construction. The second condition is satisfied by the plaintiffs' admission that the damage occurred after Kingwood relinquished ownership of the property.[3]

Contrary to the plaintiffs' contention, the "your work" exclusion is neither unconscionable nor unenforceable under Texas law. The record contains documentation from the Texas Department of Insurance that the CGL policies issued to Kingwood are based on a standard form developed by the Insurance Services Office, Inc. ("ISO")[4] and approved for use in Texas on December 6, 2001. The Texas Supreme Court has observed that such a policy "spreads the contractor's risk" and "is issued based on an evaluation of risks and [expected] losses that is actuarially linked to premiums." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1,

---

[3] The Court notes that this acknowledgment is supported by Mid-Continent's occurrence-based policies. *See Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 225 (5th Cir. 2009); *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008) ("[P]roperty damage . . . occur[s] when actual physical damage to the property occur[s]."). Property damage in this case occurred no earlier than the spring of 2008 when, according to an inspection report, cracks "sudden[ly]" appeared in the tile flooring in the Feasters' kitchen. "The cracks themselves"—not the faulty workmanship that caused them—constitute "physical damage" as contemplated by the policies. *Wilshire*, 581 F.3d at 225. In *Wilshire*, where property damage caused by a construction project was deemed to have occurred during the policy period, the Fifth Circuit underscored that "cracks are not merely a warning of prior undiscovered damage; they are the damage itself." *Id.*

[4] "The ISO is the industry organization responsible for drafting the industry-wide standard forms used by insures." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 5 n.1 (Tex. 2007).

10 n.7 (Tex. 2007).[5] Although its purpose is to "protect the insured from liability for damages when [its] own defective work or product damages someone else's property," the typical CGL policy "cover[s] only 'insurable risks' and exclude[s] business risks." *Mid-Continent Cas. Co. v. JHP Development, Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (quoting *Farmington Cas. Co. v. Duggan*, 417 F.3d 1141, 1142 (10th Cir. 2005); Robert J. Franco, *Insurance Coverage For Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Ins. L.J. 785, 785 (Spring 1995)).

The category of so-called "business risk exclusions" at issue in this case is the exclusion for faulty workmanship, which excludes coverage for an insured's defective performance. *See id.* at 211-12 (citing cases; internal quotation marks omitted). In the construction industry, "faulty workmanship will [typically] be excluded from coverage by specific exclusions because that is the CGL's structure." *Lamar Homes*, 242 S.W.3d at 10 (citing 2 STEMPEL ON INSURANCE CONTRACTS § 14.01). In Mid-Continent's policies, the "your work" exclusion serves this purpose. Like others of its kind, the exclusion excludes coverage for property damage to the insured's completed work, *id.* at 11—here, the Feasters' home.

In *Lamar Homes*, the Texas Supreme Court examined identical exclusionary language contained in an unrelated CGL policy issued by Mid-Continent. The only difference between that exclusion and the disputed exclusion here is that the exclusion in *Lamar Homes* contained "one notable exception for work performed for the insured by a subcontractor." *Id.*[6] The court

---

[5] A CGL policy is different than a performance bond, which "guarantees [the contractor's] performance" and "is underwritten based on what amounts to a credit evaluation of the particular contractor and its capabilities to perform its contracts, with the expectation that no losses will occur. Unlike insurance, the performance bond offers no indemnity for the contractor; it protects only the owner." *Id.* at 10 n.7.

[6] In fact, the "your work" exclusion in *Lamar Homes* contained the same exception that appears in the original version of Mid-Continent's policy in this case. As noted *supra* note 2, the policy in this matter was endorsed to eliminate this exception.

found that by its plain terms, the exception "preserved coverage that the 'your-work' exclusion would otherwise negate." *Id.* Coverage was therefore available for damage to the builder's work if it was caused by the defective performance of a subcontractor. *Id.* at 11-12.

In reaching this conclusion, the court made a critical observation that is instructive for this case. It accepted the builder's concession that the "your work" exclusion "would have eliminated coverage . . . but for the subcontractor exception." *Id.* at 11. This concession, the court noted, was "consistent with other authorities who have commented on [the exception's] effect." *Id.* (citing authorities). The court's observation makes it clear that coverage is excluded under the "your work" exclusion where, like here, exceptions are absent to preserve coverage.

Because the Court finds that the "your work" exclusion is a proper basis for granting Mid-Continent's motion, it is unnecessary to reach the parties' remaining contentions. The Court also notes that Mid-Continent's alternative basis for denying coverage—its application of exclusion "j" to damage determined to have occurred while Kingwood owned the property—is moot since the plaintiffs admit that the damage occurred only after the property sale.

## VI.   CONCLUSION

Based on the foregoing analysis and discussion, the Court REINSTATES summary judgment for Mid-Continent and again DENIES summary judgment for the plaintiffs.

The Final Judgment (Doc. Entry No. 48) is hereby **REINSTATED**.

It is so **ORDERED.**

SIGNED on this 13th day of January, 2015.

_____
Kenneth M. Hoyt
United States District Judge